**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHRISTOPHER ANTHONY LONG,

                Petitioner,                Case No. 2:24-cv-12013

v.                                      Hon. Brandy R. McMillion
                                       United States District Judge

JOHN CHRISTIANSEN,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Christopher Anthony Long ("Petitioner"), currently in custody at the Kinross Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See generally* ECF No. 1. Petitioner challenges his conviction for second-degree murder (MICH. COMP. LAWS § 750.317), carjacking (MICH. COMP. LAWS § 750.529a), and first-degree fleeing and eluding a police officer (MICH. COMP. LAWS § 750.479a(5)) for a violation of his Sixth Amendment right to a speedy trial and for the ineffective assistance of counsel in entering a plea. *Id.* Because the state court's adjudication of the claims did not contravene or erroneously apply clearly established Supreme Court precedent, the petition for writ of habeas corpus is **DENIED**.

1

**I.**

On October 4, 2021, Petitioner pleaded guilty in the Genesee County Circuit Court to second-degree murder, carjacking, and first-degree fleeing and eluding a police officer with a sentence agreement of a minimum of 25 years for the murder conviction. *See generally* ECF No. 10-9. In exchange for his plea, charges of first-degree felony murder, second-degree fleeing and eluding, reckless driving causing death, reckless driving causing serious impairment, operating with a suspended license causing death, and operating with a suspended license causing serious impairment were dismissed. ECF No. 10-9, PageID.337. Petitioners' sentence for carjacking would be served concurrently with the other sentences even though Michigan law allowed the possibility of a consecutive sentence. *Id.* at PageID.338. The plea agreement also resulted in dismissal of another criminal case against Petitioner. *Id.* at PageID.331-334.

In response to the trial court's questions, Petitioner acknowledged the plea agreement and his desire to plead guilty. He was advised of the maximum penalties he faced because of the plea and further acknowledged he was waiving his trial rights by entering a plea. *Id.* at PageID.337-339. When asked, Petitioner also acknowledged that no one had threatened him to plead guilty and that it was his choice to plead guilty. *Id.* at PageID.339-340.

2

The trial court ultimately sentenced Petitioner to concurrent imprisonment terms of 25-40 years for the murder conviction, 200-375 months for the carjacking conviction, and 7-15 years for the fleeing and eluding conviction. *See* ECF No. 10-10, PageID.358.[1] Petitioner subsequently moved to withdraw his guilty plea, which was denied by the trial court on August 22, 2022. ECF No. 10-12. Petitioner's conviction was affirmed on appeal. *People v. Long,* No. 362741 (Mich. Ct. App. Oct. 25, 2022); *lv. den.* 988 N.W.2d 480 (Mich. 2023). This habeas petition followed thereafter.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2254(d), to impose the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Petitioner was originally mistakenly sentenced for a second-degree fleeing and eluding charge of 4-10 years, but when the Michigan Department of Corrections brought the error to the trial court's attention, Petitioner was resentenced to 7-15 years for the first-degree fleeing and eluding charge to which he pleaded guilty. *See* ECF No. 10-11.

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

4

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Id.* at 98.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*  When a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99.  That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id*. at 99-100.

Here, Petitioner's claims were raised on his direct appeal, and the Michigan Court of Appeals denied the claims in a form order "for lack of merit in the grounds presented."  The Michigan Supreme Court subsequently denied Petitioner leave to appeal in a standard form order without any extended discussion.  Consequently, the AEDPA's deferential standard of review applies to Petitioner's claims because these orders amounted to a decision on the merits. *See Werth v. Bell*, 692 F.3d 486, 492-94 (6th Cir. 2012).

5

**III.**

Petitioner seeks habeas relief on two grounds: (1) a violation of his speedy trial rights; and (2) ineffective assistance of counsel which resulted in an unknowing and involuntary plea.  *See generally* ECF No. 1.  The State opposes both grounds. *See generally* ECF No. 9.  The Court will address each in turn.

**A.    VIOLATION OF SPEEDY TRIAL RIGHTS**

Petitioner first alleges that his right to a speedy trial was violated because of the 26-month delay between his arrest on July 18, 2019 and his scheduled trial date of October 5, 2021.  *See* ECF No. 1, PageID.24-30.

As an initial matter, Petitioner's entry of an unconditional guilty plea waives his speedy trial claim.  *See United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) ("Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'").  The plea functions as a waiver that includes alleged speedy trial violations, which are non-jurisdictional.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (concluding that the petitioner's speedy trial claim was waived when the petitioner entered an unconditional no contest plea because the right to a speedy trial is not a jurisdictional issue).

As the Sixth Circuit previously stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense

6

with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  Here, Petitioner entered an unconditional guilty plea, so the Court finds habeas relief on speedy trial grounds unfounded.  *See* ECF No. 10-9, PageID.346; ECF No. 10-12, PageID.392-394.

Nonetheless, even if Petitioner's speedy trial claim was not waived, it fails on the merits.  The Sixth Amendment, applicable to the states through the Fourteenth Amendment, guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" *See* U.S. CONST. amend. VI.; *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) (citing *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967)).  That right exist "to protect presumptively innocent defendants from languishing in jail while the government doddles to prosecute them." *See United States v. Allen*, 86 F.4th 295, 303-04 (6th Cir. 2023) (citing *Betterman v. Montana*, 578 U.S. 437, 442-43 (2016)).

To determine whether there has been a speedy trial violation, courts balance four factors in conjunction with other relevant circumstances: (1) the length of the speedy trial delay, (2) the reasons for it, (3) whether the defendant assert his right to a speedy trial, and (4) whether he suffered any prejudice.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  No single factor is determinative, rather a court must weigh them

and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533. The right to a speedy trial "is amorphous, slippery, and necessarily relative." *Vermont v. Brillon,* 556 U.S. 81, 89 (2009) (internal quotations omitted).

The first *Barke*r factor – *length of the delay* – is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *See Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (citing *Barker*, 407 U.S. at 530). Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52 (1992). Courts have generally found postaccusation delays that approach one year to be "presumptively prejudicial." *Id.* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000).

Petitioner alleges a 26-month delay between his arrest and scheduled trial date. This is presumptively unreasonable. However, in looking to the second *Barker* factor – *reason for the delay* – the Court finds the majority of the 26-month delay was the result of the historic Covid-19 pandemic. In evaluating this factor, the Court determines "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005) (*citing Doggett*,

8

505 U.S. at 651).  The resultant delay here was caused by the need to protect court personnel, litigants, and the general public from the dangers of COVID which can be attributed to neither the government nor Petitioner.

During the September 17, 2020 pre-trial conference, the trial court indicated that the delay in bringing Petitioner to trial was a result of the Covid-19 pandemic. ECF No. 10-4, PageID.274.  At a subsequent motion hearing on June 21, 2021, the trial court noted once more that a year and a quarter of the delay of Petitioner's case up to that time had been due to the Covid-19 pandemic shutting down the courts or reducing their activity, which the court indicated would not be held against the prosecutor.  ECF No. 10-6, PageID.297-298.  Similarly, at the September 22, 2021 pre-trial conference when Petitioner sought to discharge his counsel, the trial court again noted "[w]e weren't going to get you to trial any sooner because of Covid." ECF No. 10-8, PageID.322.  By the time of Petitioner's scheduled trial date of October 5, 2021, roughly 18 months of the delay was the result of the Covid-19 pandemic.

The Sixth Circuit and other circuits treat trial delays caused by the COVID-19 pandemic "as a valid reason that also weighs against the defendants (or at least as a neutral reason that favors neither party)."  *Allen*, 86 F.4th at 305, *cert. denied*, 144 S. Ct. 2621 (2024), *cert. denied sub nom. Davis v. United States*, 144 S. Ct. 2646 (2024) (collecting cases).  Moreover, there is nothing in the record to suggest that

9

the delay was intentionally caused by the prosecution. *See Norris v. Schotten,* 146 F. 3d 314, 327-28 (6th Cir. 1998); *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). There is nothing to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (*quoting Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over the petitioner. *Id.; see also U.S. v. Brown*, 498 F. 3d 523, 531 (6th Cir. 2007).

Additionally, it appears that at least some of the delay may have also been attributable to the fact that there were ongoing discussions about a possible plea bargain. ECF No. 10-13, PageID.444-445. Ongoing plea negotiations between the prosecutor and defense is a valid neutral reason for a delay in proceeding to trial. *See e.g., United States v. Criswell*, 360 F. Supp. 3d 694, 710-12 (S.D. Ohio 2019). Therefore, the Court finds the *reason behind the delay* factor neutral in its *Barker* analysis.

With regard to the third *Barker* factor, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. A criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* According to the record, Petitioner made his

first motion for bond on October 23, 2020, more than fifteen months after his arrest. ECF No. 10-1, PageID.167-168. Thus, Petitioner's fifteen-month delay in asserting his right to a speedy trial also weighs against a finding that his right to a speedy trial was violated. *See e.g.*, *United States v. Flowers,* 476 F. App'x 55, 63 (6th Cir. 2012).

Finally, the fourth *Barker* factor – *prejudice to the defendant* – requires a habeas petitioner to show that the trial delays caused "substantial prejudice." *See Brown v. Romanowski*, 845 F.3d 703, 716 (6th Cir. 2017). Substantial prejudice can take the form of (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the defendant's defense will be impaired by dimming memories and loss of exculpatory evidence. *See Barker*, 407 U.S. at 532. "Of these [factors], the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Petitioner argues that while he cannot identify any witness that may have been unavailable to him, or that any documentation was lost during the delay, "there was inherent damage to his ability to defend himself." *See* ECF No. 1, PageID.29. The Court disagrees.

Petitioner has made only vague, generalized allegations that the delay in bringing him to trial caused him anxiety, disrupted his employment, and interfered with his liberty. And Petitioner attributes most of these broad allegations to his actual conviction and sentence, rather than the delay in bringing him to trial. *See*

11

ECF No. 1, PageID.28-29.  As such, these allegations are insufficient to establish prejudice for a speedy trial claim.  *See United States v. Franklin*, 622 F. App'x 501, 507-08 (6th Cir. 2015).  "Absent any claims that the delay negatively affected his defense, it can be presumed that the conviction would have resulted regardless of the delay.  Thus, in the circumstances of this case, [Petitioner's] vague assertions of prejudice do not rise to the level of actual prejudice."  *Id.* at 508.  Moreover, any prejudice to Petitioner from his pre-trial incarceration "is too slight to constitute an unconstitutional denial of his right to a speedy trial," in light of the fact that the other *Barker* factors do not support Petitioner's speedy trial claim.  *See Philpots v. Rewerts*, 2025 WL 2712825, at *7 (citing *Wells v. Petsock,* 941 F.2d 253, 259 (3rd Cir. 1991)).

Consequently, even if Petitioner's guilty plea did not waive his speedy trial rights, the *Barker* factors weigh against finding a speedy trial violation.  Therefore, the Petition is denied as to the first claim for habeas relief.

**B.**    **INVOLUNTARY GUILTY PLEA, INEFFECTIVE ASSISTANCE OF COUNSEL, AND DENIAL OF SUBSTITUTE COUNSEL**

Petitioner's second argument for habeas relief encompasses three co-dependent issues: (i) he argues his guilty plea was involuntary, (ii) because he was denied effective assistance of counsel, (iii) when the Court refused to appoint substitute counsel.  *See* ECF No. 1, PageID.31-32.  Without new counsel, pursuant to Michigan law, Petitioner argues the trial court violated his federal due process

rights by failing to conduct a reasonable inquiry into his complaint, thereby forcing him to either enter the plea involuntarily or proceed to trial. *See id.* The Court disagrees.

A guilty plea entered in state court must be voluntarily and intelligently made. *See Doyle v. Scutt*, 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his or her plea. *Hart v. Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him." *United States v. Ormsby*, 252 F.3d 844, 849 (6th Cir. 2001).

Before entering a guilty plea, a defendant is entitled to the effective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). And the lack of effective assistance can warrant a due process violation. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). "To succeed on an ineffective assistance of counsel claim, a petitioner must show (1) that his lawyer's performance was deficient and (2) that the deficiency prejudiced the defense." *See Bigelow v. Williams*, 367 F.3d 562, 570 (6th

13

Cir. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "When a defendant who is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  However, these rights are not absolute.  *See Hynes v. Birkett*, 526 F. App'x 515, 520 (6th Cir. 2013).  "To rise to the level of a federal due process violation, an error of state law must effectively 'deprive the defendant of fundamental fairness in the trial process.'" *Id.* (citing *Turpin v. Kassulke*, 26 F.3d 1392, 1399 (6th Cir. 1994)).

Here, evaluating the circumstances surrounding the guilty plea, Petitioner asserts he "was induced to plead guilty by a very specific form of coercion—the breakdown of his relationship with his court-appointed attorney."  *See* ECF No. 1, PageID.33.  Because of that breakdown, and the trial court's denial of his motion for substitute counsel, he "had no alternative but to accept the offer and plead guilty so as to avoid a worse outcome at trial."  *Id.*  However, this Court finds that argument unavailing, as the record reflects a different story.

### 1.  *Petitioner's guilty plea was entered voluntarily and intelligently.*

At the outset, the Court notes Petitioner does not have a federal or state constitutional right to withdraw his guilty plea.  *See Hynes*, 526 F. App'x at 521; *People v. Kean*, 516 N.W.2d 128, 130 (Mich. Ct. App. 1994).  Thus, "[u]nless a

petitioner's guilty plea otherwise violated a clearly established constitutional right, whether to allow the withdrawal of a habeas petitioner's guilty plea is discretionary with the state trial court."  *Burch v. Maclaren*, No. 2:14-cv-13984, 2015 WL 4599856, at *4 (E.D. Mich. July 29, 2015) (citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005)).  To find a violation, this Court considers all the relevant circumstances surrounding the entry of the guilty plea.  *See United States v. Hall*, 373 F. App'x 588, 590 (6th Cir. 2010) (citing *Brady v. United States*, 397 U.S. 742, 749 (1970)).  The factual findings of a state court that the guilty plea was properly made are generally presumed to be correct.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

Petitioner bases his "coercion" argument on a discussion before the trial court at a pretrial conference on September 22, 2021.  *See generally* ECF No. 10-8; ECF No. 10-9.[2]  During the pretrial hearing, Petitioner was under the impression the agreement would be for 15-20 years rather than 25 years.  *See* ECF 10-8, PageID.319-320.  But the trial court clarified with Petitioner's counsel that this was only mentioned for typical negotiation tactics and was ultimately rejected by the prosecutor's office.  *See id.* at PageID.320.  The trial court noted a 15–20-year plea deal was not even up for consideration.  *Id.*  Nearly two weeks later, during the plea

---

[2] When a petitioner brings a federal habeas petition challenging his or her plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily.  *Garcia*, 991 F.2d at 326.

hearing, Petitioner acknowledge that he understood the charges against him and that by taking the plea, he was waiving his rights to contest it on the grounds "of any promise or inducement[.]" *See* ECF No. 10-9, PageID.337-338. Petitioner's straightforward and simple answers to the trial court's inquiry were sufficient to bind him to the consequences of the plea agreement. *See United States v. Jones*, 403 F.3d 817, 823-24 (6th Cir. 2005). This is especially true when the trial court also informed Petitioner of his maximum sentence if he proceeded to trial, prior to him entering the plea. *See* ECF No. 10-9 at PageID.337; *accord King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

The fact that Petitioner faced "two unattractive options," proceeding to trial with a lawyer that he had problems with, or pleading guilty, does not by itself create "a cognizable theory of coercion." *United States v. Roberts*, No. 21-3151, 2022 WL 1165477, at *3 (6th Cir. Apr. 20, 2022) (quoting *United States v. Hall*, 373 F. App'x 588, 591 (6th Cir. 2010)). "A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty." *Burch*, 2015 WL 4599856, at *4 (citing *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002)). Here, the Court finds Petitioner did just that, as supported by the following ruling of the state court on Petitioner's motion to withdraw his guilty plea:

> So, that takes us to the bigger issue, was that plea voluntary, intelligent, knowing, all of that. Mr. Long, I probably get overly involved in some

of my defendants, particularly when they are young like you. I remember that day so clearly. I also, back when this motion was just-- was filed, I actually did review the video, but I didn't need to review the video because--well, partly because your counsel put a transcript in the motion, but also, I remember your plea.

You turned 20 just this year. You're a young man and I feel for you. But I also saw the video that day, and Mr. Ross saw the video. I don't know if he saw it just that day or if he's seen it before, by Ms. Legendre played the video. You--I'm pretty sure you were here when she played it. The deal that was offered as Mr. Clark [the prosecutor at the motion to withdraw hearing] has characterized it; it was a gift.

* * * *

I do not believe that today or back when I took your plea you did not understand what the risk was if you went to trial. I understand the argument that's being made by Mr. Simon [Petitioner's appellate counsel], but I do not believe that your plea was not knowing and intelligently made.  I don't.  I am not going to allow you to withdraw it.

ECF No. 10-12, PageID.393-94.  Therefore, this Court finds, as did the state court, that Petitioner's guilty plea was both voluntary and intelligently made.

### 2.  Petitioner's claim for ineffective assistance of counsel fails

"To obtain habeas relief for ineffective assistance of counsel, a petitioner must show that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent."  *Upshaw v. Stephenson*, 97 F.4th 365, 371 (6th Cir. 2024).  In the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's error, the defendant would not have pleaded guilty but would have insisted on going to trial.  *Burch*, 2015 WL 4599856,

17

at *4 (citing *Hill*, 474 U.S. at 58-59).  And that reasonable probability must be sufficient to undermine confidence in the outcome in Petitioner's case.  *See Strickland*, 466 U.S. at 694.

Here, when analyzing Petitioner's claim under the *Strickland* standard, Petitioner points to no instances where his counsel forced him to take the plea deal, or that "but for" counsel's performance, the outcome of the case would have been different.  *See Bigelow*, 367 F.3d at 570.  In fact, the record before the Court reflects the opposite.  After speaking with Petitioner's counsel, in an attempt "to get the best deal," the prosecutor dismissed five out of the nine counts Petitioner originally faced.  *See* ECF No. 10-8, PageID.316-317.  And instead of potentially serving life in prison without parole under a felony murder charge, pending conviction at trial and a hearing pursuant to *Miller v, Alabama*[3], the prosecutor offered a plea to second degree murder with a 25-year minimum penalty, in addition to dropping another case pending against Petitioner.  *See* ECF No. 10-8, PageID.318; ECF No. 10-9, PageID.333.  During the pretrial conference, the prosecution represented they were ready to proceed with trial, with substantial evidence—video surveillance from the store, law enforcement dashcam footage, and victim cooperation.  *See* ECF No. 10-8, PageID.317.  An assessment of whether a defendant would have gone to trial but for counsel's errors, if any at all, largely depends on whether the affirmative defense

---

[3] 567 U.S. 460 (2012).

likely would have succeeded at trial. *See Burch*, 2015 WL 4599856, at \*4 (citing *Hill*, 474 U.S. at 59). Contrary to Petitioner's assertion of coercion, all of these instances point to a reasonable probability that the outcome in Petitioner's case may have been worse than the plea deal had he gone to trial. Counsel's advice to accept the plea deal was reasonable and rational based on the record before the Court. Because federal courts are instructed to afford deference to trial counsel in the area of plea bargaining, *see Premo v. Moore*, 562 U.S. 115, 125 (2011), without further proffer, this Court finds the ineffective assistance of counsel claim fails to warrant habeas relief.

### 3. Trial Court's denial of Petitioner's request for Substitute Counsel fails to warrant habeas relief

Finally, Petitioner asserts that in denying his request for substitute counsel, the trial court impeded on his due process rights to effective assistance of counsel. In support of his claim, Petitioner contends, under Michigan law, where there has been a breakdown in the relationship between counsel and the defendant, new counsel should be appointed. *See* ECF No. 1, PageID.35 (citing *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)).

That notion is consistent with clearly established law surrounding the Sixth Amendment right to adequate representation. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989), *see also United States v. Powell*, 847 F. 3d 760, 779-780 (6th Cir. 2017). However, adequate representation does not

encompass a defendant's preference for a particular lawyer. *Caplin*, 491 U.S. at 624; *see also Wheat v. United States*, 486 U.S. 153, 159 (1988). Trial courts are afforded great depth "in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).

Here, in the colloquy concerning the request for substitute counsel, the trial court informed Petitioner that having substitute counsel would further delay trial because a new defense counsel would need time to get caught up to speed. *See* ECF No. 10-8, PageID.321-322. It also found that there was no breakdown in the attorney-client relationship, as much as Petitioner was just unhappy with trial counsel:

> You've not really given me a good reason to fire Mr. Ross [defense counsel]. He has been communicating with the People. There was nothing he could do. We weren't going to get you to trial any sooner because of Covid. There are people over there longer than you. I have people who have been over there longer than you.
>
> ***
>
> So we've--I don't believe that there's been a breakdown in the relationship. You're--it sounds like you're just not happy. You've stated--said the words, that there's been no progress. Well, there's been tremendous progress, you've got an offer on the table. An offer that actually improved in the last 24 hours, apparently, by three years. You've just turned--all right, '22, you'll turn 20 next year. You're 19.
>
> No question, what's being talked about it a lot of time. But you know, at least that's a finite number versus the mandatory minimum that will happen if you are convicted of any kind of felony. And Ms. Legendre [the assistant prosecutor] has put the stakes on the table for you, and I hope you understand them. I know you're young. And if you are

convicted, it's already been referenced, I would have to conduct what's called a *Miller* hearing that actually looks at, you know, the youthful brain, how you're not very good at making decisions. But you've got to pull yourself together and make a decent decision on this, because this is going to be one of the most important decisions you make in your life. I hate to see you make the wrong one that causes you more distress.

So, you're keeping Mr. Ross. You're keeping your trial date of October I'm going to--today's the plea cutoff date, but I'm going to extend it another day. What, today's Wednesday? I'm going to give you until Friday to talk about it, think about it. You know, again, you are entitled to a trial, we will do your trial. And the People apparently, are going to be trotting out witnesses and video and everything else. It'll take over a week, but I've got blocked that out of the schedule.

ECF No. 10-8, PageID.322-24.

As previously stated, Petitioner's counsel was not ineffective nor was the guilty plea Petitioner entered invalid. Absent any further proffer, this Court finds the trial court did not violate clearly established law in denying Petitioner's request for substitute counsel. Therefore, Petitioner's request for habeas relief on his second argument is also denied.

## IV.

The Court denies a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v.*

21

*McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith, and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V.

**IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**. However, Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

**IT IS SO ORDERED.**

Dated: July 8, 2026                          s/Brandy R. McMillion
     Detroit, Michigan                       HON. BRANDY R. MCMILLION
                                   United States District Judge